UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| WAYNE ROGERS, <br> *Plaintiff,* | : <br> : <br> : <br> : | |
| v. | : <br> : | Civil No. 3:22-cv-820 (OAW) |
| NED LAMONT, et al., <br> *Defendants.* | : <br> : <br> : <br> : | |

**INITIAL REVIEW ORDER**

Self-represented plaintiff Wayne Rogers ("Mr. Rogers" or "Plaintiff") has filed a complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983, against the defendants, Governor Ned Lamont ("Governor Lamont"), Warden Devonia Long ("Warden Long"), and Commissioner Doe[1] (collectively "Defendants"). Mr. Rogers alleges the defendants have violated his Fourteenth Amendment rights through their deliberate indifference to certain conditions of confinement. For the following reasons, the court dismisses the complaint in part but permits Plaintiff to proceed with a Fourteenth Amendment conditions of confinement claim against Warden Long.

**I.   STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which

---

[1] Commissioner Doe is listed as a defendant in the body, but not captioning, of the complaint. ECF No. 1 at ¶¶ 1, 3. Because Plaintiff is a pro se litigant, the court construes the complaint as naming Commissioner Doe as a defendant. *See Gonzalez-Torres v. Roy*, 3:19-cv-1139 (VAB), 2020 WL 5994960 at *1 n.1 (D. Conn. Oct. 9, 2020) ("Courts have found pro se complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." (citation omitted)).

relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2).  Although highly detailed allegations are not required, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to pro se litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*,

706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 3006) (per curiam)).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)).  This liberal approach, however, does not exempt pro se litigants from the minimum pleading requirements described above: a pro se complaint still must "'state a claim to relief that is plausible on its face.'"  *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678).  Therefore, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the court may not "invent factual allegations" that the plaintiff has not pleaded.  *Id.*

## II.     BACKGROUND

During the events alleged in the complaint, Plaintiff was held as a pretrial detainee at Hartford Correctional Center ("HCC").  ECF No. 1 at 2.  Plaintiff's Complaint states that on June 30, 2021, Governor Lamont signed an executive order ("Executive Order 21-1") requiring the Connecticut Department of Correction ("DOC") to implement measures that generally would decrease the use of isolated confinement and in-cell restraints and that would increase inmate visitation opportunities.  *Id.* at 3 ¶ 2; ECF No. 1-1 at 2—3.

After Governor Lamont's executive order went into effect, HCC officials implemented weekly "lockdowns" affecting HCC's general inmate population.  ECF No. 1 at 3 ¶ 4.  These lockdowns ran from Friday to Sunday and were in effect for a least eight

hours on one day and 24 hours the remaining two days. *Id.* Under lockdown, HCC inmates are not afforded any opportunity visit with non-inmates or leave their cell. *Id.* at 3—4 ¶ 5.

Plaintiff also alleges that HCC's cells are poorly ventilated and, in the summer, consistently 20 degrees warmer than the outside weather. *Id.* at 4 ¶¶ 6—7. The summertime temperature of Plaintiff's cell can exceed 100 degrees. *Id.* ¶ 8. Plaintiff must endure this oppressive heat within his cell, without a fan, for at least 16 hours a day. *Id.* at 4—5 ¶¶ 8, 11. Plaintiff does, however, have access to water in his cell. *Id.* at 4 ¶ 8.

Plaintiff indicates he brought HCC's weekend lock down practices and oppressive summertime cell temperatures to the attention of the wardens and the lieutenants, and that he was told that "it's summer" and that "officers like their weekends off." *Id.* ¶ 9.[2]

## III.   DISCUSSION

Section 1983 of Title 42 of the United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally-protected rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). In this case, Plaintiff brings § 1983 claims asserting that the defendants violated his Fourteenth Amendment due process rights through their deliberate indifference to his oppressive conditions of confinement. ECF No. 1 at 5 ¶ 12. To remedy the alleged violations of his due process rights, Plaintiff seeks punitive damages and injunctive relief. *Id.* ¶¶ 1—5.

---

[2] Plaintiff neither specifies how he brought his conditions of confinement to Warden Long's attention, nor who responded to complaints he says he raised to the wardens and the lieutenants. ECF No. 1 at 4 ¶ 9.

4

A.   **Personal Involvement**

To prevail in a § 1983 suit, a plaintiff must establish not only a violation of their federally-protected rights, but also the "personal involvement" of a named defendant. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). When assessing the sufficiency of a defendant's alleged involvement, the United States Court of Appeals for the Second Circuit has recognized that "a plaintiff may not rely on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated" their federally-protected rights. *Id.* (quoting *Iqbal*, 556 U.S. at 676).

In this case, Plaintiff brings § 1983 claims against HCC's warden, DOC's Commissioner, and the Governor of Connecticut. Plaintiff appears to sue Commissioner Doe on the theory that he or she appointed Warden Long and generally is responsible for overseeing the operations of DOC facilities. ECF No. 1 at 3. Significantly, Plaintiff does not allege that Commissioner Doe was aware of the alleged conditions of confinement giving rise to his claims. Without such an allegation, Plaintiff has not pled sufficient facts supporting an inference that Commissioner Doe personally was involved in any presumed violation of his rights. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") (Internal quotation marks and citation omitted)).

Plaintiff's Complaint cites Governor Lamont's involvement by virtue his enactment of an executive order. However, Plaintiff does not contend that Governor Lamont violated

his constitutional rights through enactment of the executive order.  Rather, he contends that HCC officials violated his constitutional rights by failing to comply with that order.  Thus, Plaintiff appears to sue Governor Lamont on the theory that, as governor, he inherently is liable for the constitutional torts of subordinate state officials.  Because *respondeat superior* liability does not exist in the context of § 1983 litigation, *see Iqbal*, 556 U.S. at 676, the Complaint does not plead facts supporting an inference that Governor Lamont personally was involved in any presumed violation of Plaintiff's rights.

In contrast to Commissioner Doe and Governor Lamont, it is reasonable to assume that, as HCC's warden, Defendant Long was aware of and implicitly sanctioned the alleged practice of "locking down" HCC's entire general inmate population during weekends.  Likewise, it is reasonable to infer that Warden Long must have been aware of any excessively hot conditions in the cells of HCC inmates during the summertime.  Because the Complaint's allegations permit an inference that Warden Long implemented or tolerated allegedly unconstitutional policies or customs, Plaintiff has alleged sufficient facts to permit an inference that Warden Long personally was involved in the alleged constitutional violations.  *See Stone #1 v. Annucci*, 2021 WL 4463033 at *8 (S.D.N.Y. Sept. 28, 2021) ("[W]here a plaintiff can establish that a senior official promulgated an unconstitutional policy with a culpable mental state … such official could be deemed to be personally involved in a constitutional violation.")

In sum, the Complaint alleges facts permitting an inference that Warden Long personally was involved in the alleged violations of Plaintiff's constitutional rights.  However, he has not alleged facts sufficient to establish Commissioner Doe's or Governor

Lamont's personal involvement.  Consequently, all claims brought against Commissioner Doe and against Governor Lamont are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**B.     Conditions of Confinement Claims**

In order to adequately plead a violation of due process pursuant to the Fourteenth Amendment, based on alleged unconstitutional conditions of confinement, a pretrial detainee must satisfy "objective" and "*mens rea*" elements of a claim.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  With respect to the objective element, the court has recognized that "prisoners may not be deprived of their basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health." *Id.* at 30.  Subjectively, a detainee-plaintiff must show that a defendant-official: (1) "acted intentionally to impose [an] alleged condition"; or (2) "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Id.* at 36.

      *1.     Weekend Lockdowns*

Plaintiff contends that Warden Long violated his due process rights by subjecting him to weekly "lockdowns" that lasted three days per a week.  Under "lockdown" Plaintiff was not permitted to leave his cell or participate in visitations with friends or family.

Inmates—sentenced and unsentenced—do have a basic need for out-of-cell exercise/recreation time.  *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996).  However, "the Due Process Clause does not guarantee [pretrial detainees] a 'general liberty interest in movement outside of [a] cell.'"  *Quint v. Lamont*, 3:22-cv-1263 (VAB),

2022 WL 17487978 at *6 (D. Conn. Dec. 6, 2022) (quoting *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

In his complaint, Mr. Rogers indicates that he is not permitted to leave his cell at all during at least two of the three days in a weekend lockdown (Friday through Sunday). ECF No. 1 at 3 ¶ 4.  The Complaint specifically states that "if not for the entire day, then at least [e]ight hours one day then the entire rest of the days." *Id.*  Therefore, on one of the three days, the lockdown may be in place for only part of the day.  On non-lockdown days, Plaintiff asserts that he must remain in his cell for at least 16 hours.  *Id.* at 4 ¶ 11.  Thus, Plaintiff presumably is free to leave his cell for up to eight hours on non-lockdown days.  And, based on the allegations in the Complaint, Plaintiff is permitted to leave his cell for at least 40 hours per a week.  While out of his cell, Plaintiff does not contend that he is deprived of opportunities to exercise or recreate.  Plaintiff has not alleged a deprivation of a basic human need regarding recreation outside of his cell.  *See Quint*, 2022 WL 17487978 at *6 (repeated but temporary facility "lockdowns" deemed not to have violated a pretrial detainee's due process rights).

With respect to visitation limitations, Plaintiff alleges that he was denied visitation opportunities only when the HCC facility was under "lockdown," and that HCC was only under lockdown during weekends (Friday through Sunday).  ECF No. 1 at 3—4 ¶¶ 4—5.  The Due Process Clause does not prohibit state officials from placing significant limits on the abilities of pretrial detainees to visit with friends and family.  *See Black v. Rutherford*, 468 U.S. 576, 586—87, 589 (1984) (county jail's blanket prohibition against contact visits between pretrial detainees and family and friends held not to violate the Due Process

Clause). Plaintiff was permitted visitation opportunities on weekdays and he has failed to allege facts sufficient to establish deprivation of a basic human need.

The alleged conditions of confinement created by HCC's weekend lockdowns did not rise to the level of the requisite objective deprivation. Accordingly, all condition of confinement claims related to such lockdowns are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

2. *Extreme Cell Temperature*

The Complaint alleges that Warden Long violated the plaintiff's due process rights by requiring him to remain in a poorly-ventilated jail cell for at least 16 hours per day. ECF No. 1 at 4—5 ¶ 11. On some days, Plaintiff was required to remain in his cell all day, *id.* at 3 ¶ 4, and the temperature in Plaintiff's cell periodically exceeded one hundred degrees. *Id.* at 4 ¶ 8.

Plaintiff's pleading satisfies the objective requirement of a conditions of confinement claim with respect to this allegation. *See Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) ("[I]t is well settled that exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment."). Evaluation of whether Plaintiff has adequately pled the *mens rea* element of this claim presents a more difficult question.

If Warden Long had no reason to think that Plaintiff was exposed to extreme heat in his cell, then she would not have acted, or failed to act, with a culpable mental state. *See Darnell*, 849 F. 3d at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.") In the complaint, Plaintiff appears to contend that his cell's temperature was "brought to the Wardens . . . attention." ECF No. 1 at 4 ¶

9. However, this assertion is vague. Plaintiff does not specify how Warden Long was made aware of his cell's excessive heat, nor that Warden Long, specifically, was notified of the condition.

Had Plaintiff alleged a condition of confinement that uniquely affected him, his allegations may have failed to state sufficient facts satisfying the *mens rea* element of his due process claim. However, Plaintiff alleges that *all* of HCC's cells were unreasonably hot in the summertime. ECF No. 1 at 4 ¶¶ 6—8. At this initial pleading stage, it is reasonable to infer that a warden is aware of persistent, notable conditions of confinement applicable to all inmates in his or her custody. *See Rogers v. Lamont*, 3:21-cv-1722 (OAW), 2022 WL 16855969 at *4—5 (D. Conn. Nov. 10, 2022).

Plaintiff adequately has pled a claim that Warden Long violated his due process rights by intentionally or recklessly exposing him to extreme heat within his cell. This claim will proceed for further development of the record.

    **C.    Executive Order Violation Claims**

The complaint could be construed as an attempt to bring claims for violations of Governor Lamont's executive order. However, section 1983 claims must allege a violation of federally-protected rights. *See Rehberg*, 566 U.S. at 361. Further, the courts in this District previously have determined that the executive order implicated in this case (Executive Order 21-1) creates no private right of action. *See Quint*, 2022 WL 17487978 at *3. The court concludes that to the extent Plaintiff claims a violation of Governor Lamont's executive order, he fails to state a claim. Accordingly, any such claims hereby are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D. Official Capacity Claims and Injunctive Relief

Plaintiff attempts to assert claims against Defendants in their official capacities.[3] It is well settled that the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits brought by private citizens against the state, any state government entities, and any state government officials in their official capacities. *See generally Lewis v. Clarke*, 581 U.S. 155, 161—62 (2017); *T.W. v. New York State Bd. of Law Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). While it is true that the state may waive this immunity and that Congress may abrogate it, Plaintiff does not allege that the State of Connecticut has waived its sovereign immunity from suit in federal court. Nor has Congress abrogated state sovereign immunity with the enactment of section 1983. *See Salu v. Miranda*, 830 F. App'x 341, 347 (2d Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 338—5 (1979)). Thus, as all defendants are state officials, Plaintiff cannot obtain damages from any of them for official-capacity conduct.

The Supreme Court has recognized an exception to Eleventh Amendment immunity that permits a federal court to grant an order of prospective injunctive relief against a state official for an ongoing violation of federal law. *Ex Parte Young*, 209 U.S. 123, 156 (1908). Although Plaintiff seeks injunctive relief in the form of fans for inmate cells at HCC, ECF No. 1 at 5 ¶ 3, on April 10, 2023, he filed a notice of a change of address indicating that he is no longer incarcerated at HCC[4], ECF. No. 15. Thus, his requests for injunctive relief are moot. *See See Booker v. Graham*, 974 F.3d 101, 107

---

[3] The Complaint specifically names Governor Lamont and Warden Long in both their individual and official capacities, ECF No.1 at 2.
[4] The court takes judicial notice of the Connecticut DOC website, which reflects that Plaintiff was sentenced on June 29, 2022, and is currently serving a prison sentence at Corrigan-Radgowski Correctional. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=323651 (last visited May 18, 2023).

(2d Cir. 2020) ("'In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'") (Quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)).

All claims against defendants in their official capacities, including any claims for injunctive relief, hereby are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

### IV.    CONCLUSION

The court enters the following orders:

(1) The Fourteenth Amendment conditions-of-confinement claim brought against Warden Long in her individual capacity shall **PROCEED,** to the extent that it relates to extreme heat in Plaintiff's cell.

(2) The Fourteenth Amendment conditions-of-confinement claim brought against Warden Long is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), to the extent that it relates to conditions of confinement arising from weekend lockdowns.

(3) All claims brought for alleged violations of an executive order issued by Governor Lamont, and all claims brought against Defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

(4) Therefore, all claims brought against Governor Lamont and Commissioner Doe are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2).  The Clerk of Court respectfully is directed to please **TERMINATE** Governor Lamont as a party to this action (Commissioner Doe previously had not been entered as a defendant in this action and, therefore, need not be terminated).

(5) Plaintiff's requests for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

(6) Should Plaintiff wish to amend his Complaint, he may file a motion for leave to amend within thirty (30) days from the date of this Order.

(7) The Clerk shall please verify the current work address for Warden Long with the DOC Office of Legal Affairs; mail to her at her confirmed address, within **twenty-one (21) days** of this Order, a waiver of service of process request packet (containing the Complaint and this order); and, on the **thirty-fifth (35th) day** after mailing, report on the status of the waiver request.  If Warden Long fails to return the waiver request, the Clerk is instructed to please make arrangements for in-person individual-capacity service on Warden Long by the United States Marshals Service, and Warden Long shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(8) The Clerk shall please mail a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs, and to the Office of the Attorney General.

(9) Warden Long shall please file her response to the complaint (either an answer, or a motion to dismiss), within **sixty (60) days** from the date the notice of lawsuit and the waiver of service of summons forms are mailed to her.  If Warden Long chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claims recited above, please.  Warden Long also may include any and all additional defenses permitted by the Federal Rules.

(10) Discovery, according to Federal Rules of Civil Procedure 26—37, shall be completed within six months (180 days) from the date of this Order.  Discovery requests shall not be filed with the court.

(11) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(12)  The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.

(13)  If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should please indicate all of the case numbers in the notification of change of address.  He should also notify Defendants or defense counsel of his new address.

(14)  While incarcerated, Plaintiff shall use the Prisoner Electronic Filing Program when filing documents with the court.  He is advised that the Program only may be used to file documents with the court (not discovery requests).  D. Conn. L. Civ. R 5(f).  Discovery requests must be served on Defendant's counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 18th day of May, 2023.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE